UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                        :        Chapter 13

MICHAEL KEVITCH
STACY KEVITCH                                :

                    Debtors                  :        Bankruptcy No. 04-32127F

.................................................

MEMORANDUM

.................................................

Lou's of Wilmington, Inc., (hereinafter "Lou's") a creditor of the chapter

13 debtors in this case, has pending before this court a motion seeking to dismiss or

convert this bankruptcy case, and/or relief from the automatic stay.[1]  In connection with

that motion, Lou's has asserted that the debtors are ineligible for chapter 13 relief because

their debts exceed the ceiling established by 11 U.S.C. § 109(e).

Subsection 109(e) contains the provisions applicable to chapter 13

eligibility, which in pertinent part stated at the time of the debtors' bankruptcy filing:

> Only an individual with regular income that owes, on the date
> of the filing of the petition, noncontingent, liquidated,
> unsecured debts of less than $307,675 and noncontingent,
> liquidated, secured debts of less than $922,975, or an
> individual with regular income and such individual's spouse,
> except a stockbroker or a commodity broker, that owe, on the
> date of the filing of the petition, noncontingent, liquidated,
> unsecured debts that aggregate less than $307,675 and

---

[1]By agreement, this motion was bifurcated so that the issues of dismissal and
conversion would be determined before the lift-stay request.  See Pretrial Order dated February 2,
2005.

noncontingent, liquidated, secured debts of less than $922,975
may be a debtor under chapter 13 of this title.[2]

Prior to the debtors' bankruptcy filing, Lou's had commenced a lawsuit in
district court against both debtors (and other defendants), docketed at C.A. No. 03-CV-
6748, asserting claims for conversion, breach of fiduciary duty, fraud, copyright
infringement, violation of the Digital Millennium Copyright Act, and civil conspiracy.  In
its motion for partial summary judgment, however, Lou's acknowledges that the only
remaining claims in the district court against Mrs. Kevitch involve counts I (conversion)
and VI (civil conspiracy).  All of the remaining counts against her, including the two
copyright claims, were withdrawn.

The damages sought in the amended complaint for each claim was "in
excess of Seventy Five Thousand ($75,000.00) Dollars."  Based upon the claims asserted
in this civil action, Lou's filed an unsecured proof of claim in this bankruptcy case, dated
March 3, 2005, asserting that it is owed by both debtors "at least $430,692.60."  The
claim is calculated as follows: $162,725.66 in cash and $75,000 in inventory allegedly
stolen from Lou's by Mr. Kevitch; $17,966.94 in false credit card charges paid by Lou's
to Mr. Kevitch; and "between $750 and $150,000" for copyright infringement and
"between $2,500 and $25,000" for the purported violations of the Digital Millenium
Copyright Act.[3]

---

[2]The secured and unsecured debt ceilings are adjusted every three years pursuant
to 11 U.S.C. § 104(b)(1).  The figures noted in the text went into effect on April 1, 2004.  This
bankruptcy case was filed in December 2004.

[3]In this claim, Lou's notes that certain other damage claims it may assert are
"[l]ess easily quantifiable."

2

Lou's has now sought partial summary judgment on the issue of the debtors' chapter 13 eligibility.  This creditor contends that there are no material facts in dispute and that it is entitled to a determination that these debtors are ineligible for chapter 13 relief because their unsecured claims exceed the statutory debt ceiling.  The debtors counter that the movant has not demonstrated an absence of material facts in dispute; nor has it established its entitlement to relief as a matter of law.

As will be seen, the debtors maintain that there are disputed facts concerning the eligibility issue based, in part, upon the husband/debtor's denial that he was responsible for the purported misappropriation of Lou's assets, as well as other improper conduct that Lou's asserts occurred prepetition.

This eligibility issue is significant to the parties, given the nature of the claims raised by Lou's against these debtors.  If Lou's is found to hold valid claims for fraud, conversion, breach of fiduciary duty and willful misconduct, such claims may be dischargeable in chapter 13, but not in a chapter 7 case.[4]  Furthermore, if the debtors are eligible for chapter 13 relief, Lou's may be forced to litigate its claims in this bankruptcy forum, foregoing its demand for a trial by jury made in the district court since it has filed a proof of claim.  See Langenkamp v. Culp, 498 U.S. 42 (1990); Travellers Int'l AG. v. Robinson, 982 F.2d 96, 99 (3d Cir. 1992), cert. denied, 507 U.S. 1051 (1993).

---

[4]Debtors who successfully reorganize under chapter 13, in cases commenced prior to October 17, 2005, receive a discharge under section 1328 that is greater in scope than a chapter 7 discharge.  The chapter 13 discharge is sometimes referred to as a "superdischarge," see In re Stern, 266 B.R. 322, 325 (Bankr. D. Md. 2001), as it will discharge debts arising from fraud and willful misconduct.  See, e.g., Matter of Gregory, 705 F.2d 1118, 1120 n.2 (9th Cir. 1983) ("If all payments under the plan are made, § 1328(a) clearly authorizes the discharge of all debts provided for in the plan, including fraud-related debts that are not dischargeable in Chapter 7 or 11 proceedings [.]").

3

The debtors have argued that the record made in connection with this motion does not demonstrate their ineligibility for chapter 13 relief for two reasons. First they maintain that Lou's has failed to comply with the requirements of Rule 56, thereby precluding any consideration of summary judgment on this point. Second they contend that even if Lou's had complied with the requirements of Rule 56, it has not demonstrated an absence of material facts on the issue of a "liquidated claim."

I turn first to the debtors' pleading contention, as it may be dispositive of this motion.

## I.

## A.

Lou's underlying dismissal motion constitutes a contested matter under Fed. R. Bankr. P. 9014. Rule 9014(c) provides that Fed. R. Bankr. P. 7056 is applicable in contested matters. And Rule 7056 incorporates the summary judgment rule, Fed. R. Civ. P. 56. Thus, one can obtain summary judgment in a bankruptcy contested matter. See generally In re FV Steel and Wire Co., 2005 WL 2401636, at *2 (Bankr. E.D. Wis. 2005). Indeed, in appropriate circumstances, it is possible for a creditor to obtain summary judgment on the issue of chapter 13 eligibility. See In re Reader, 274 B.R. 893, 895 (Bankr. D. Colo. 2002).

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To the extent that a party

relies upon affidavits, Rule 56(e) requires that supporting and opposing affidavits "be

made on personal knowledge," that these affidavits "set forth such facts as would be

admissible in evidence" and that they "show affirmatively that the affiant is competent to

testify to the matters stated therein." See, e.g., In re UFG International, Inc., 225 B.R. 51,

55 (S.D.N.Y. 1998). Furthermore, if an affidavit refers to documents, then "sworn or

certified copies" must be attached to the affidavits. Fed. R. Civ. P. 56(e).

The requirements of Rule 56(e) have been summarized as follows:

> (1) the affidavit must be made on the personal knowledge of
> the affiant; (2) the affidavit must set forth facts which would
> be admissible at trial; (3) the affidavit must show
> affirmatively that the affiant is competent to testify to the
> matters therein; and (4) if the affiant refers to written
> documents within the affidavit, sworn or certified copies of
> the documents must be attached to the affidavit or served
> therewith.

In re Chapman, 265 B.R. 796, 811 (Bankr. N.D. Ill. 2001).

The purpose of summary judgment is to avoid the expense and delay of an

unnecessary trial when no material facts are in dispute and one of the parties is entitled to

prevail on the merits. See, e.g., Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d

Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

As explained by the Third Circuit Court of Appeals:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine
> dispute of material fact. Gottshall v. Consolidated Rail Corp.,
> 56 F.3d 530, 533 (3d Cir. 1995) (citing Fed. R. Civ. P. 56(c)).
> In order to defeat "a properly supported summary judgment
> motion, the party opposing it must present sufficient evidence
> for a reasonable jury to find in its favor." Groman v.

5

> Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)
> (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
> 250-52, 106 S. Ct. 2505, 2511-12, 91 L. Ed. 2d 202 (1986)).
> In essence, the non-moving party must demonstrate a dispute
> over facts that might affect the outcome of the suit.  Id.
> Moreover, in reviewing the record, we must give the
> non-moving party the benefit of all reasonable inferences.
> Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d
> Cir. 1993).

Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996); see In re Saler, 205 B.R. 737, 741 (Bankr. E.D.  Pa. 1997).

"[The court must] view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir.), cert. denied sub nom. Pennsylvania Secretary of Public Welfare v. Idell S., 516 U.S. 813 (1995); Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 200 (3d Cir. 1995); Goodman v. Mead Johnson, 534 F.2d at 573.

The moving party bears the burden of proving that no genuine issue of material fact is in dispute.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).  Once the movant has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id., at 587 (quoting Fed. R. Civ. P. 56(e)).

Accordingly, Rule 56 places constraints upon the type of attachments a party seeking summary judgment may utilize to demonstrate an absence of material facts. In general, "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  Therefore,

6

> [t]he first task for the court in considering a motion for
> summary judgment is to determine which evidence it may
> consider in deciding whether a material factual dispute exists.
> The court generally must consider evidence set forth in five
> enumerated categories of materials, namely, "pleadings,
> depositions, answers to interrogatories, and admissions on
> file, together with affidavits, if any." Fed. R. Civ. P. 56(c).
> Evidence that can be considered by a court under Rule 56 is
> normally of the same quality of evidence that the fact finder
> may consider at trial. Thus, for a statement to be admissible, it
> must be made under oath and on personal knowledge, it must
> set forth facts which would be admissible in evidence, and it
> must show that the affiant is competent to testify to the
> matters stated therein. See Fed.R.Civ.P. 56(e).

Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 384-85 (D.N.J. 1998).

Thus, transcripts of out-of-court statements, where these statements are

unsworn or not given under oath, cannot be considered for purposes of summary

judgment.  Id. at 385.  An expert's report that is attached to an affidavit signed only by

movant's counsel cannot support summary judgment.  Fowle v. C & C Cola, 868 F.2d 59,

67 (3d Cir. 1989); see also Northwestern National Insurance Co. v. Baltes, 15 F.3d 660,

662 (7th Cir. 1994).  Nor will medical reports be considered if unaccompanied by sworn

affidavits from those preparing the reports.  Kitzhoffer v. Brantley, 2001 WL 767571, at

*2 n.6 (E.D. Pa. 2001).  Similarly, "[a]n ordinary or unverified complaint" will not

support summary judgment; nor will a verified pleading not made upon personal

knowledge.   Coquellette, et al. 11 Moore's Federal Practice 3d, § 56.14[1] (1999).

In sum, documents that would be inadmissible hearsay if offered at trial

cannot be used to grant or deny a party summary judgment.  See Eisenstadt v. Centel

Corp., 113 F.3d 738 (7th Cir. 1997):

> [H]earsay is inadmissible in summary judgment proceedings
> to the same extent that it is inadmissible in a trial . . . , except
> that affidavits and depositions, which (especially affidavits)

> are not generally admissible at trial, are admissible in
> summary judgment proceedings to establish the truth of what
> is attested or deposed, . . . provided, of course, that the
> affiant's or deponent's testimony would be admissible if he
> were testifying live.

Id., at 742.

B.

In support of its motion for partial summary judgment, Lou's initially relied upon the following: the docket entries of its district court litigation against the debtors (Motion, ¶ 1); the allegations found in its unverified amended complaint filed in the district court (Motion, ¶¶ 2, 5, 6, 8, 8,[5] 9, 10); Lou's answer to an interrogatory propounded by the debtors, without any information concerning who answered the question and whether that person had first hand knowledge (Motion, ¶¶ 7, 36); a copy of a spreadsheet purportedly from Lou's dated March 2003, which document was not attached to any affidavit (Motion, ¶ 7); business records purportedly from a corporation known as Goldstar Cash, LLC, which documents were not attached to any affidavit (Motion, ¶ 12); copies of two web pages—one from Delaware Fast Funds and the other from GoldStarCash.com (Motion, ¶¶ 18-19); a copy of web pages involving "fastfundsnow.com" and "goldstarcash.com" purporting to show their similarity and when each website was modified between 1996 and 2005 (Motion, ¶ 22); and a copy of the debtors' amended bankruptcy schedules E and F (Motion, ¶ 32).

---

[5]The motion contains two paragraphs numbered 8.

The debtors contend, correctly, that none of these exhibits are accompanied by any affidavits. Save for the debtors' amended bankruptcy schedules, wherein the debtors admit liquidated, noncontingent, undisputed, unsecured claims in the amount of $77,430 (they list Lou's as a disputed, contingent, unliquidated claim owed $0), there is no basis to determine that these attachments or references made in Lou's motion for summary judgment would be admissible at trial. A party cannot simply rely upon unverified allegations made in a lawsuit pending in another forum (which allegations may themselves be the subject of denial by the defendants in that litigation) to justify summary judgment in this bankruptcy court. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves [.]") (emphasis added).

Accordingly, these attachments would not, by themselves support a grant of summary judgment in Lou's favor. See, e.g., Taylor v. Principi, 141 Fed. Appx. 705, 708 (10th Cir. 2005); see generally Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550-51 (9th Cir. 1989).

Lou's has sought to correct these defects under Rule 56 through a supplemental filing. See generally Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d at 1551. This submission consists of verified statements submitted by Messrs. Stanton Myerson and Lawren Nelson.

Mr. Nelson avers that he is married to debtor Stacy Kevitch's sister and that the two sisters are daughters of Stanton Myerson's wife. Mr. Nelson stated that while present at the debtors' home he observed them hiding electronic appliances and jewelry

9

prior to the arrival of Stanton Myerson.  He also swears that the debtors requested that he

not mention their conduct to Stanton Myerson.

Mr. Stanton Myerson, in his declaration, avers that he is the majority

shareholder of Lou's of Wilmington, and that husband/debtor, Michael Kevitch, was a

corporate employee who served as the "sole onsite manager" of Lou's Wilmington store.

One of the debtor's responsibilities was to reconcile the cash on hand, securing these

funds and then reporting the amount of cash to the corporate comptroller.

On March 14, 2003, Mr. Kevitch's employment was terminated.  Moreover,

on that date Mr. Myerson met with Mr. Kevitch, among others.  At this meeting, Mr.

Myserson swears that "Mr. Kevitch admitted" to him and the others present the

following:

> a. he allowed and assisted his brother Todd Kevitch to copy
> Lou's Website for the benefit of GoldstarCash [sic] and that
> he should not have allowed this copying;
>
> b. he had used personal credit cards to pay for advertising for
> Goldstar cash [sic] and submitted those expenses to Lou's for
> reimbursement which was payed [sic] by Lou's;
>
> c. he had a 10% ownership interest in Goldstar Cash;
>
> d. he had bartered a 2 carat diamond ring owned by Lou's in
> exchange for personal landscaping services for his home; and
>
> e. He had stolen cameras, television sets, jewelry and stereos
> from Lou's and given them to his wife without charging them
> against his account at Lou's[.]

Mr. Myerson also swears that Lou's discovered a cash shortfall of

$22,808.87 in its Wilmington store on March 15, 2003.  He participated in an

investigation into the corporate records, assisted by the corporate comptroller and

concluded that there were $145,329.36 in other improper cash withdrawals from that

location, and at least $17,996.94 in advertising expenses reimbursed to Mr. Kevitch by

Lou's that were actually expenses of a competing entity (Goldstar), which entity was

created by the debtors and Todd Kevitch. He affirms that Mr. Kevitch is responsible for

all of these improper corporate losses.

Mr. Myerson further states that all the allegations in the district court

amended complaint are true and correct "to the best of his information, knowledge, and

belief." Included in those allegations is that Mr. Kevitch, Mrs. Kevitch and/or Todd

Kevitch stole or converted approximately $75,000 in Lou's inventory. (Amended

Complaint, ¶¶ 57-61). He asserts that the March 2003 spreadsheet involving cash receipts

is a business record of Lou's of Wilmington. He swears that Lou's traded as "Delaware

Fast Funds," that its website was improperly copied by Goldstar Cash, and that the copy

of the Goldstar website and the site modification history included in the summary

judgment motion were obtained from an internet archive site. Finally, Mr. Myerson states

that he was assisted in the preparation of movant's answers to interrogatories and believes

those answers to be true.

In response to Lou's request for partial summary judgment, Mr. Kevitch

(but not Mrs. Kevitch) submitted a sworn declaration. In it, he acknowledges that he was

an employee of Lou's of Wilmington from 1991 until March 14, 2003. During most of

his employment, he was manager of Lou's store located at 712 Market Street,

Wilmington, Delaware. As of 1999, this store operated as a pawnshop, check-cashing

store, and "payday loan" business.

Mr. Kevitch expressly denies stealing $142,725.66 from Lou's. He avers

that many employees had access to the cash and that Lou's records include "human

errors." He also denies misappropriating $22,808.87, alleged stolen just prior to his termination from Lou's on March 14, 2003, arguing that the records from March 13th, his last full day of employment, fully account for all funds and he could not possibly have taken cash the following day.

Mr. Kevitch also swears that he did not wrongfully take $75,000 in inventory from Lou's. He represents that Lou's inventory records contained unreconciled discrepancies for a number of years prior to his termination and do not account for customer theft or computational error. In addition, he swears that Lou's allegation that he was improperly reimbursed for expenses in the amount of $17,966.94 is in error, and this sum represents repayment of loans the debtor made to Lou's, and which loans are reflected on the corporation's records.

Finally, insofar as the Goldstar Cash website is concerned, Mr. Kevitch declares that his brother is the sole owner of the Goldstar corporation, and that the document appended to Lou's summary judgment motion reflects certain loans and projected loan fees involving Goldstar, rather than actual income collected. This document also does not include Goldstar expenses, and involves loan transactions made independently from the challenged website. Moreover, he contends that Lou's never obtained a valid copyright on its website or the content of the site.

I note that, in his declaration, Mr. Kevitch does not deny that: he assisted his brother in copying Lou's website for the benefit of Goldstar; he bartered a 2 carat diamond ring owned by Lou's in exchange for personal landscaping services for his home; and he misappropriated cameras, television sets, jewelry and stereos from Lou's and gave them to his wife.

12

III.

In its instant motion for partial summary judgment, Lou's contends that

there are no material facts in dispute that the debtors' have unsecured claims exceeding

the chapter 13 debt ceiling.  The specific language used by section 109(e) refers to

unsecured debts owed as of the date of the bankruptcy filing and which were

"noncontingent" and "liquidated" as of that date.

The precise language of section 109(e), when compared with other Code

provisions such as sections 101(5) and 303(b)(1),[6] has led courts to conclude that the

terms "contingent" and "unliquidated" differ from the term "disputed."   Because section

109(e) does not exclude disputed claims, such claims are included when determining

eligibility for chapter 13 relief.   See,  e.g., Matter of Knight, 55 F.3d at 234-35 (7th Cir.

1995); In re Sylvester, 19 B.R. 671 (B.A.P. 9th Cir. 1982); Gould v. Gregg, Hart, Farris &

Rutledge, 137 B.R. 761 (W.D. Ark. 1992); In re Lamar, 111 B.R. 327 (D. Nev. 1990).

Clearly, the debtors dispute their liability to Lou's based upon the

husband/debtor's alleged misconduct and the allegations of a civil conspiracy.  Moreover,

there are material facts in dispute concerning their liability.  But if Lou's claims were not

contingent nor unliquidated, those claims, which are admittedly unsecured, would be

considered in determining the debtors' eligibility for chapter 13 relief.

---

[6]A claim is defined in section 101(5) as a right to payment whether or not
disputed, liquidated, matured, or contingent.  In an involuntary bankruptcy case, petitioning
creditors cannot hold claims "contingent as to liability or the subject of a bona fide dispute."  11
U.S.C. § 303(b)(1).

The debtors do not contest that Lou's claims against them are not
contingent.  The Third Circuit has referred favorably to a long standing definition of a
"contingent claim" in <u>Matter of M. Frenville Co.</u>, 744 F.2d 332, 336 n.7 (3d Cir. 1984),
<u>cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes</u>, 469 U.S. 1160 (1985):

> Bankruptcy judges have defined a contingent claim as a claim
> which becomes due only on the occurrence of a future event. .
> . . One frequently cited definition of contingent is that
> "claims are contingent as to liability if the debt is one which
> the debtor will be called upon to pay only upon the occurrence
> or happening of an extrinsic event."  <u>In re All Media
> Properties, Inc.</u>, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980),
> <u>aff'd</u>, 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam).

<u>Accord</u>, <u>e.g.</u>, <u>In re Albano</u>, 55 B.R. 363, 366 (N.D. Ill. 1985); <u>In re Pennypacker</u>, 115
at 507.

In the context of an involuntary bankruptcy petition, which can be filed
only by a petitioning creditor holding a claim that is "not contingent as to liability," <u>see</u>
11 U.S.C. § 303(b)(1), the Fifth Circuit Court of Appeals provided this summary, also
utilized in construing section 109(e) of the Code:

> It thus appears that the words 'fixed (or 'not contingent') as
> to liability,' as used in Sec. 59(b), were certainly not intended
> to be restricted to the sense of 'fixed liability, as evidenced by
> a judgment or an instrument in writing' -- as that term is used
> in Sec. 63a(1).  In other words, the term 'not contingent as to
> liability', as used in Sec. 59(b), is different from and broader
> than claims based on instruments in writing or judgments.  It
> follows that Sec. 59(b) contemplates that creditors, whose
> claims are not based on instruments in writing or upon
> judgments, may petition in involuntary bankruptcy, <u>e.g.</u>,
> creditors whose claims are based upon unwritten agreements
> or other transactions not yet reduced to judgment -- provided
> only that the claims be 'not contingent as to liability' in some
> other sense of that term.
>
> Examination of all the authorities clearly indicates that the
> theory on which claims have been held insufficient is that

14

> they were open, unliquidated claims (e.g., tort or quantum
> meruit claims requiring proof as to liability, reasonable value,
> damages, etc.), which by their very nature are not fixed unless
> and until juridical award [is entered] to fix liability and
> amount.

Denham v. Shellman Grain Elevator, Inc., 444 F.2d 1376, 1380 (5th Cir. 1971)

(interpreting the former Bankruptcy Act); see In re Furey, 31 B.R. 495, 497 (Bankr. E.D.

Pa. 1983).

Thus, in general, a debt is contingent if the debtor's legal duty to pay, i.e.,

his or her liability, does not exist until triggered by the occurrence of a future event that

was reasonably within the presumed contemplation of the parties at the time the original

relationship between the parties was created. See 2 Collier on Bankruptcy, ¶ 109.06[2][b]

(15th ed. rev. 2004).

If Lou's holds valid claims against the debtors, such claims arose from

actions that occurred prior to March 15, 2003. As of the date of the debtors' bankruptcy

filing on September 9, 2004, this debt was not contingent. See, e.g., In re Loya, 123 B.R.

338, 340 (B.A.P. 9th Cir. 1991) ("A tort claim ordinarily is not contingent as to liability;

the events that give rise to the tort claim usually have occurred and liability is not

dependent on some future event that may never happen."); 5 Norton Bankr. L. & Prac. 2d

§ 115:5, at 115-31 (2005) ("The better reasoned cases hold that tort claims that arise from

prepetition conduct by the debtor are noncontingent debts for eligibility purposes.").

The issue upon which the parties differ in this motion for summary

judgment—beyond their dispute over the debtors' underlying liability—is whether there

are undisputed facts demonstrating that Lou's substantial claims against them are

"liquidated." See generally In re Huelbig, 299 B.R. 721, 723 (Bankr. D.R.I. 2003)

15

("[T]he issue . . . boils down to the single question--Is Allstate's claim liquidated for purposes of Chapter 13 eligibility?").

In general, a claim is classified as "liquidated if the amount due can be determined with sufficient precision." In re Pennypacker, 115 B.R. at 505. Thus, a debt is liquidated:

> if its amount is readily and precisely determinable, as where the claim is determinable by reference to an agreement or by simple computation.

2 Collier on Bankruptcy, ¶ 109.06[2][c] at 109-44 (15th ed. rev. 2004); accord, e.g., Matter of Knight, 55 F.3d at 235 (holding that a penalty debt owed to State of Indiana was liquidated because the amount of liability, albeit disputed, was easily determined).

From this definition, one may fairly generalize that contract claims are usually liquidated claims, since the amount of any damages is readily determined from the agreement itself, while tort claims, which may require a court to fix damages, including pain and suffering, may not be liquidated. See, e.g., Matter of Belt, 106 B.R. 553, 558-559 (Bankr. N.D. Ind. 1989):

> "Liquidation" is the result of a finding that the amount of a claim can be easily determined. . . . It refers to certainty as to the money value of a claim. . . . Courts generally recognize that debts based on tort and quantum meruit claims are unliquidated until resolved by judgment decree or otherwise because the claimant's damages are not fixed.

See also United States v. Verdunn, 89 F.3d 799, 802 (11th Cir. 1996).

Courts, however, have recognized that there are exceptions to the generalization that tort claims are unliquidated claims under the Bankruptcy Code. As one court explained:

16

In <u>In re Sylvester</u>, 19 Bankr. 671, 673 (9th Cir. BAP 1982) the
court made the observation in dicta that "contract debts (even
though disputed) are considered liquidated and tort claims are
not."  That statement is generally correct, but must be taken in
its proper context.  As the <u>Sylvester</u> court more specifically
explained:

> The concept of liquidation has been variously
> expressed.  The common thread . . . has been
> ready determination and precision in
> computation of the amount due. . . .  Some cases
> have stated the test as to whether the amount
> due is capable of ascertainment by reference to
> an agreement or by simple computation. . . .
>
> Therefore, whether a debt is liquidated or not
> for purposes of 11 U.S.C. § 109(e) does not
> depend strictly on whether the claim sounds in
> tort or in contract, but whether it is capable of
> ready computation.  For the same reason,
> whether a debt is liquidated does not depend on
> whether it is disputed. Thus, a disputed debt
> which is capable of ready determination is
> liquidated.

<u>In re Loya</u>, 123 B.R. at 340 (footnote omitted).

In other words, while many prepetition tort claims will be unliquidated,
since the fixing of the precise amount due is not readily determinable by a bankruptcy
court, there will be situations when that generalization will not apply.  For example, a
malpractice claim against a debtor/tax advisor has been held to be a liquidated debt under
limited circumstances, even though no litigation against the debtor was concluded.  <u>Id</u>.
Moreover, there are other reported decisions in which courts have held that tort claims
were liquidated although no judgments had been entered, because the amount of the claim
was readily determinable.  <u>E.g.</u>, <u>In re Jordan</u>, 166 B.R. 201 (Bankr. D. Me. 1994)
(debtor/employee who embezzled funds from employer deemed to have a liquidated debt
since the amount of the embezzlement could be easily calculated); <u>In re Sitarz</u>, 150 B.R.

17

710, 725 (Bankr. D. Minn. 1993) (same); Matter of McGovern, 122 B.R. 712, 717

(Bankr. N.D. Ind. 1989) (claim against debtor for misappropriating funds from a non-

profit agency was liquidated, since the amount of such funds was readily determinable);

In re Furey, 31 B.R. at 497 (debtor misappropriated checks from his employer in an

amount already fixed by an insurance company).

The Second Circuit Court of Appeals determined that a contested claim,

involving whether a debtor was a "responsible person" and thus liable for a corporation's

failure to remit employee withholding taxes, was indeed liquidated, utilizing an analysis

that distinguished a disputed claim from one that is unliquidated:

> The terms "liquidated" and "unliquidated" generally refer to a
> claim's value (and the size of the corresponding debt) and the
> ease with which that value can be ascertained. . . .  "The
> concept of liquidation for purposes of section 109(e) relates
> only to the amount of liability not the existence of liability,"
> United States v. Verdunn, 89 F.3d at 802 n. 10. If "the value
> of the claim is easily ascertainable," it is generally viewed as
> liquidated. In re Knight, 55 F.3d at 235. If that value depends
> instead on "a future exercise of discretion, not restricted by
> specific criteria, the claim is unliquidated." United States v.
> Verdunn, 89 F.3d at 802.

> Thus, the "courts have generally held that a debt is
> 'liquidated' . . . where the claim is determinable by reference
> to an agreement or by a simple computation." 2 L. King,
> Collier on Bankruptcy ¶ 109.06[2][c] (15th ed. rev. 1997);
> see, e.g., In re Knight, 55 F.3d at 235 (debt is liquidated if its
> value "has been ascertained or can readily be calculated"); In
> re Fostvedt, 823 F.2d at 306 (debt is liquidated if it is "subject
> to ready determination and precision in computation of the
> amount due" (internal quotation marks omitted)); In re
> Nicholes, 184 B.R. at 89 ("The test for 'ready determination'
> is whether the amount due is fixed or certain or otherwise
> ascertainable by reference to an agreement or by a simple
> computation."). A claim plainly is liquidated if its amount is
> made certain "by operation of law." United States v. Verdunn,
> 89 F.3d at 802.

> A few courts have held that the existence of a dispute, without more, is sufficient to render a claim unliquidated. . . . The "overwhelming body of precedent," however, is to the contrary. United States v. Verdunn, 89 F.3d at 802 n. 9 ("Most courts have concluded ... that disputed debts are included in the calculation of the amount of debt for [Chapter 13] eligibility purposes.... [T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated." (internal quotation marks omitted)). We agree with the majority position. The Code uses both "unliquidated" and "disputed" in its definition of "claim"; to rule that a claim (and hence the debt with which it is coextensive) is unliquidated whenever it is disputed would be to render the term "unliquidated" mere surplusage. Such an interpretation would also allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter. We conclude that effect must be given to both terms, and we agree with the Eleventh Circuit that "the concept of a liquidated debt relates to the amount of liability, not the existence of liability." United States v. Verdunn, 89 F.3d at 802.

In re Mazzeo, 131 F.3d 295, 304-05 (2d Cir. 1997); see, e.g., In re Slack, 187 F.3d 1070, 1075 (9th Cir. 1999) ("We hold that a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided.").

IV.

Utilizing this definition of liquidation, a number of courts have found in certain circumstances that creditor claims for fraud, embezzlement, theft or misappropriation were liquidated, even though the chapter 13 debtor contested the claim. See, e.g., In re Huelbig, 313 B.R. 540 (D.R.I. 2004) (fraud); In re Reader, 274 B.R. 893,

895 (Bankr. D. Colo. 2002) (misappropriation); In re Visser, 232 B.R. 362, 363 (Bankr.

N.D. Tex. 1999) (misappropriation); In re Jordan, 166 B.R. 201 (Bankr. D. Me. 1994)

(embezzlement); In re Sitarz, 150 B.R. 710 (Bankr. D. Minn. 1993) (embezzlement); In re

McGovern, 122 B.R. 712 (Bankr. N.D. Ind. 1990) (misappropriation); In re Clark, 91

B.R. 570 (Bankr. D. Colo. 1988) (deception of employer); In re Furey, 31 B.R. 495

(Bankr. E.D. Pa. 1983).

The debtors, however, believe a better analysis of the term "liquidated" is

found in In re Baird, 228 B.R. 324 (Bankr. M.D. Fla. 1999), which held that "for a debt to

be easily ascertainable [and thus liquidated] it must be capable of ready determination

from a simple hearing, rather than an extensive and contested evidentiary hearing in

which substantial amounts of evidence may be necessary to establish amounts or

liability." Id. at 331; see also In re Chang, 2004 WL 2370641, at *5 (Bankr. D. Haw.

2004). To do otherwise, the debtors contend, would be to permit any creditor to deprive

an individual of eligibility for chapter 13 relief by simply asserting a large claim, no

matter how frivolous that claim may be.

The debtors' argument is similar to the issue posed by the preclusive effect,

if any, of the debtor's bankruptcy schedules for purposes of section 109(e) eligibility.

Courts have been reluctant to treat such schedules as conclusive on the questions of

amount, classification, contingency or liquidation of claims, for to do so would cede to

the debtor control over the issue of eligibility.

Thus, in this judicial district, Judge Twardowski concluded that

determination of eligibility for chapter 13 should not rely completely upon the debtor's

classification of his debts on his bankruptcy schedules. "We reject these approaches

because we find that to the extent that they require total reliance by the court upon the

debtor's characterization of the debts in his schedules, we do not believe that the debtor

should be given unbridled authority to determine his eligibility for chapter 13 relief." In

re Pennypacker, 115 B.R. 504, 506 (Bankr. E.D. Pa. 1990).

> Other courts agree:
>
> The rule proposed by Debtors is intriguing in its simplicity,
> but the Court believes such deference to the numbers and
> designations found on a debtor's schedules is unwarranted.
> While agreeing that a faithful reading of section 109(e) calls
> for a snapshot of indebtedness at the time a debtor files his
> petition, the Court will cannot [sic] go so far as to find that
> the image captured on the debtor's schedules is always in
> perfect focus.
>
> Recognizing that a debtor's schedules are a potentially
> imperfect measure of the debtor's debts, the Court concludes a
> more appropriate approach is to use the debtor's schedules as
> a starting point in the section 109(e) inquiry, but also to
> consider postpetition events and developments to the extent
> (and only to the extent) they shed light on the amount of
> secured and unsecured debt actually owed by the debtor at the
> time of the filing of the petition.  For example, in a situation
> such as Debtors', where a secured debt is mistakenly
> scheduled as an unsecured obligation, it would exalt form
> over substance to refuse to consider a postpetition amendment
> to the schedules that properly classifies the indebtedness.
> Similarly, if it were to become evident postpetition that the
> conditions giving rise to a contingent liability all occurred
> prepetition, common sense requires recognition of the reality
> that the debtor was liable for the debt on the petition date.

In re Hatzenbuehler, 282 B.R. 828, 833 (Bankr. N.D. Tex. 2002) (footnotes omitted).

> I concur with the debtors here that a creditor's claim should also not be

conclusive on the issue of chapter 13 eligibility.  However, as with a debtor's schedules,

such a claim must be considered as relevant to the issue.  Courts have held persuasively

that the appropriate standard is whether the claim that undermines eligibility has been

asserted in good faith.  The issue of good faith is resolved without first holding a trial on

the merits of the claim:

> Rather than making final determinations on disputed
> liabilities, it is appropriate for a court considering eligibility to
> rely primarily upon a debtor's schedules and proofs of claim,
> checking only to see if these documents were filed in good
> faith. . . . In so doing, however, the court should neither place
> total reliance upon a debtor's characterization of a debt nor
> rely unquestionably on a creditor's proof of claim, for to do so
> would place eligibility in control of either the debtor or the
> creditor. . . . At a hearing on eligibility, the court should thus,
> canvass and review the debtor's schedules and proofs of
> claim, as well as other evidence offered by a debtor or the
> creditor to decide only whether the good faith, facial amount
> of the debtor's liquidated and non-contingent debts exceed
> statutory limits.

In re Barcal, 213 B.R. 1008 (B.A.P. 8th Cir. 1997); see, e.g., In re Reader, 274 B.R. at

899.

Indeed, upon reviewing decisions finding misappropriation and

embezzlement claims to be liquidated, one finds references to indicia of good faith

supporting the creditor's claim.  For example, in Furey the husband/debtor had admitted

to misappropriation of assets.  Id., 31 B.R. at 497.  In Clark the debtor had admitted to

"deceiving" his employer.  Id. 91 B.R. at 572.  In Sitarz the debtor had been found guilty

in a criminal trial and ordered to make restitution.  Id., 150 B.R. at 716.  In Visser the

debtor had also acknowledged some improper conduct.  Id., 232 B.R. at 363.  In Reader a

state court special master had issued a report suggesting the debtor's misappropriation of

funds.  Id., 274 B.R. at 895.  In Huelbig there had been a nolo contendere plea in state

criminal court.  Id., 299 B.R. at 722.

Some courts have relied upon indicia of less strength to determine that a

creditor's claim should be included as liquidated for purposes of chapter 13 eligibility.

22

Thus, in McGovern the bankruptcy court refers to an internal audit and payment by an

insurance company. Id. 122 B.R. at 713-14. In Knight there is also a reference to an

audit. Id., 55 F.3d at 232. In Jordan, the court mentions an investigation by the debtor's

employer of alleged misappropriations, a resignation from employment by the debtor and

a civil lawsuit brought prepetition. In Baird, where there was no finding that the debt was

liquidated, the court only refers to a pending state court lawsuit as of the date of the

debtor's chapter 13 bankruptcy filing.

In this instance, upon review of the undisputed evidence, I conclude that the

substantial misappropriation claims asserted by Lou's against Mr. Kevitch were made in

good faith. Lou's has demonstrated more than that it simply filed a pending civil lawsuit

against the debtor. It has offered evidence of an internal investigation of its own records,

which business records have been produced, and which reflect substantial losses of cash

and inventory. It has also presented evidence that Mr. Kevitch was in charge of the store

from which these losses occurred. In addition, Lou's has provided evidence that a

website it used was essentially copied by a competing company, which competitor

certainly involves the debtor's brother and possibly the debtor. Lou's offered verified

statements that Mr. Kevitch hid personal property from Mr. Myerson, suggesting that

property came from Lou's inventory. Moreover, there is sworn testimony that Mr.

Kevitch admitted to Mr. Myerson, in the presence of others, that he had been involved in

certain improper conduct while employed at Lou's.

While I recognize that this undisputed evidence does not conclusively

establish Mr. Kevitch's liability to Lou's in any particular amount, and that the debtor

could present evidence at trial on these claims eliminating or reducing his liability, the

23

admissible and unrefuted evidence presented with the instant motion for summary

judgment does demonstrate that Lou's claims of improper taking of corporate property,

filed against Mr. Kevitch in this chapter 13 case, was made in good faith.  See In re Clark,

91 B.R. at 575:

> Absent a full trial on the merits, which might demonstrate the
> claim is not allowable, this Court is persuaded the Travelers'
> claim is supported by not insubstantial evidence.  The
> quantum of evidence thus far produced by Alpine
> demonstrates that the Travelers claim appears bona fide and
> that Travelers has, at least, a threshold right to payment.  It
> may indeed be subject to counterclaims, setoff, affirmative
> defenses, or mitigating circumstances, all of which could
> perhaps be proved at a trial, but that does not obviate the basic
> claim or negate the fundamental right to payment on the
> claim.

(emphasis added) (footnotes omitted).

Since the amount of the claims involving missing cash ($162,725.66),

inventory ($75,000), and improper expense reimbursement ($17,966.94) are simple to

compute upon a determination of liability, these claims are indeed liquidated.

Furthermore, they aggregate to $255,692.60.

The same ease of computation cannot be said for Lou's claims against Mr.

Kevitch (as it withdrew such claims in the District Court against Mrs. Kevitch) for

purported copyright infringement and the Digital Millennium Copyright Act.

Turning first to the copyright claim, I note that Lou's asserts damages under

17 U.S.C. § 504.  This statutory provision permits an award against a copyright infringer

based either upon actual damages or statutory damages.  17 U.S.C. § 504(a).  The

statutory damage award is "in a sum of not less than $750 or more than $30,000 as the

court considers just," 11 U.S.C. § 504(c)(1), and if the infringement was willful, "the

24

court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Clearly then, statutory damages for copyright violations involve the exercise of discretion based upon the particular facts and are not liquidated until the award is made. See generally Schiffer Publishing, Ltd. v. Chronicle Books, LLC, 2005 WL 67077 (E.D. Pa. 2005) (computing statutory damages for copyright infringement).

Actual damages under section 504(b) are determined by "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The legislative history explains that calculation of even actual damages is a complex undertaking and not a simple computational task:

> A cornerstone of the remedies sections and of the bill as a whole is section 504, the provision dealing with recovery of actual damages, profits, and statutory damages. The two basic aims of this section are reciprocal and correlative: (1) to give the courts specific unambiguous directions concerning monetary awards, thus avoiding the confusion and uncertainty that have marked the present law on the subject, and, at the same time, (2) to provide the courts with reasonable latitude to adjust recovery to the circumstances of the case, thus avoiding some of the artificial or overly technical awards resulting from the language of the existing statute.
>
> ***
>
> In allowing the plaintiff to recover 'the actual damages suffered by him or her as a result of the infringement,' plus any of the infringer's profits 'that are attributable to the infringement and are not taken into account in computing the actual damages,' section 504(b) recognizes the different purposes served by awards of damages and profits. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act. Where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively,

25

since in effect they amount to the same thing. However, in
cases where the copyright owner has suffered damages not
reflected in the infringer's profits, or where there have been
profits attributable to the copyrighted work but not used as a
measure of damages, subsection (b) authorizes the award of
both.

The language of the subsection makes clear that only those
profits 'attributable to the infringement' are recoverable;
where some of the defendant's profits result from the
infringement and other profits are caused by different factors,
it will be necessary for the court to make an apportionment.
However, the burden of proof is on the defendant in these
cases; in establishing profits the plaintiff need prove only 'the
infringer's gross revenue,' and the defendant must prove not
only 'his or her deductible expenses' but also 'the element of
profit attributable to factors other than the copyrighted work.'

H.R. Rep. 94-1476 at 161 (Sept. 3, 1976).

Moreover, "the term 'gross revenue' under the statute means gross revenue

reasonably related to the infringement, not unrelated revenues." On Davis v. The Gap,

Inc., 246 F.3d 152, 160 (2d Cir. 2001); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d

400, 411 (S.D.N.Y. 2004).  This can involve complex analyses of revenue streams and

apportionment issues, see generally Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329

F.3d 923, 933 (7th Cir. 2003), and would not be calculated by simply determining the

gross profits of Goldstar Cash.

As noted earlier, the concept of a liquidated claim is one that is " readily

and precisely determinable as where the claim is determinable by reference to an

agreement or by simple computation." 2 Collier on Bankruptcy, ¶ 109.06[2][c] at 109-44

(15th ed. rev. 2004).  As this standard does not apply to claims of copyright infringement,

that portion of Lou's claim against Mr. Kevitch is not liquidated.  Cf. Corbis Corp. v.

Amazon.com, Inc., 351 F. Supp. 2d 1090, 1115 (W.D. Wash. 2004) (actual damages for

copyright infringement could not be resolved by summary judgment); Whelan Associates,

Inc. v. Jaslow Dental Laboratory, Inc., 609 F. Supp. 1325, 1327-28 (E.D. Pa. 1985) (in

general, there is no prejudgment interest awarded in a copyright infringement case, absent

bad faith, because the damages are unliquidated, relying upon the principle of Duplate

Corp. v. Triplex Safety Glass Co., 298 U.S. 448 (1936)).

A similar conclusion applies to Lou's claim under the Digital Millennium

Copyright Act, 17 U.S.C. §§ 1201, et seq.  "The DMCA was enacted in 1998 to

implement the World Intellectual Property Organization Copyright Treaty ('WIPO

Treaty'), which requires contracting parties to 'provide adequate legal protection and

effective legal remedies against the circumvention of effective technological measures

that are used by authors in connection with the exercise of their rights under this Treaty or

the Berne Convention and that restrict acts, in respect of their works, which are not

authorized by the authors concerned or permitted by law.'"  Universal City Studios, Inc.

v. Corley, 273 F.3d 429, 440 (2d Cir. 2001) (quoting WIPO Treaty, Apr. 12, 1997, art. 11,

S. Treaty Doc. No. 105-17 (1997)).

The damage provision of this statute, 17 U.S.C. § 1203(c), is patterned after

section 504 of the aforementioned copyright statute.  If I assume arguendo that Lou's has

stated a claim against Mr. Kevitch in district court under this statutory provision (the

creditor withdrew this claim as to Mrs. Kevitch),  the amount of statutory damages under

section 1203(c)(3)(B)—referred to by Lou's in its supporting memorandum, at

17—expressly falls within the discretion of the court.  And the fixing of any actual

damages would be determined by the complex matrix of apportionment, damages and

profits discussed earlier.

27

V.

The result is that Lou's has demonstrated, through undisputed evidence, a good-faith, non-contingent, liquidated, unsecured claim against Mr. Kevitch in the amount of $255,692.60.  See generally In re Slack (portion of claim may be liquidated). When added to the other non-contingent, liquidated, unsecured claims admitted on the debtors schedules, which totaled $77,430, these unsecured claims aggregate to $333,122.60: a sum that exceeds the section 109(e) debt ceiling.  Therefore, for purposes of summary judgment, Mr. Kevitch is ineligible for chapter 13 relief and cannot insist upon a liability trial in this forum.[7]

I do not reach the same conclusion as to Mrs. Kevitch.

The amended district court complaint asserted six claims against Mr. Kevitch:  conversion; fraud; breach of fiduciary duty; two copyright claims; and civil conspiracy.  Only two of those claims are presently asserted against Mrs. Kevitch: the civil conspiracy claim and the conversion claim.  As to the civil conspiracy, that aspect of the complaint seems to focus upon the creation of Goldstar Cash.  The conversion claim focuses upon the misappropriation of Lou's assets.

For purposes of summary judgment, Lou's declarations and documentary evidence are directed almost exclusively to the actions of Mr. Kevitch and Goldstar Cash; not to Mrs. Kevitch.  Other than a declaration that Mrs. Kevitch participated in hiding certain personal property from Mr. Myerson, which may make her jointly liable for the

---

[7]Nor, as he apparently intended from a review of the pretrial statement, can he insist upon a liability trial in the context of determining his eligibility for chapter 13 relief.

$75,000 inventory loss claim, there are no indicia to support, in the context of this motion,

the good faith of Lou's claims against Mrs. Kevitch for her husband's theft of cash from

his employer.  Nor can one impute the debts of Mr. Kevitch to his spouse simply because

of their marriage.  See In re Magpusao, 265 B.R. 492, 498 (Bankr. M.D. Fla. 2001)

("Even knowledge of a spouse's misconduct is insufficient to confer liability. . . .  Rather,

knowledge must be concurrent with participation in the use or enjoyment of the stolen

property in order for liability to attach.") (citations omitted).  Therefore, I cannot

conclude as a matter of summary judgment that Lou's holds a liquidated claim against

Mrs. Kevitch in such an amount that would render her ineligible for chapter 13 relief.

This conclusion, however, does not end the analysis of this summary

judgment motion.  The parties have not addressed the proper application of section 109(e)

when only one debtor in a jointly filed chapter 13 case is ineligible for relief.   My

research has found but one reported decision that expressly considered this issue.  See In

re Tabor, 232 B.R. 85, 91-92 (Bankr. N.D. Ohio 1999) (concluding that the case should

be dismissed only as to the ineligible spouse); but see In re Furey (dismissing, without

discussion, a joint chapter 13 case when only the claim against the husband/debtor

exceeded the debt limit).

The language of section 109(e) provides that the debt ceiling is not doubled

in a joint chapter 13 case filed by a husband and wife.  See 2 Collier on Bankruptcy, ¶¶

109.06[4], 302.03[5] (15th ed. rev. 2005).  Nonetheless, if the debts are not joint debts,

then one spouse may be eligible for relief and the other not by filing separate cases.  See

id. ("[I]f few of the debts are joint, each spouse may be eligible to file a separate chapter

13 case.").  The Tabor decision yields the result that, where one spouse is ineligible, the

29

joint chapter 13 petition is treated as if it had been commenced as a single bankruptcy case filed only by the eligible spouse.  While that approach may be correct, one or both parties may contend to the contrary.

Rather than hold what the parties intended as an extensive trial on the eligibility of Mrs. Kevitch, and then be faced with the possible argument that the ineligibility of her husband made the entire joint petition improper, I consider it more appropriate to defer the scheduled trial for a short period and to schedule a pretrial conference wherein this issue and any others flowing from this decision can be considered.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

MICHAEL KEVITCH
STACY KEVITCH                            :

                    Debtors            :    Bankruptcy No. 04-32127F

................................................

ORDER

................................................

AND NOW, this 4th day of November 2005, for the reasons stated in the

accompanying memorandum, it is hereby ordered that Lou's of Wilmington's motion for

partial summary judgment is granted in part and denied in part.  The husband/debtor,

Michael Kevitch, is ineligible for chapter 13 relief, pursuant to 11 U.S.C. § 109(e).

A pretrial conference shall take place on November 15, 2005 at 3:30 p.m. in

Bankruptcy Courtroom #2 to consider the effect of Mr. Kevitch's ineligibility for chapter

13 relief, both as to further proceedings with regard to Lou's motion to dismiss, and with

respect to this chapter 13 case in general.

The trial on this contested matter, previously scheduled for November 18,

2005, is postponed pending further order of this court.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Michael Kevitch
Mrs. Stacy Kevitch
6 Balsam Place
Lafayette Hill, PA 19444

Eric L. Frank, Esq.
DiDonato & Winterhalter, PC
1818 Market Street
Suite 3520
Philadelphia, PA 19103

William J. Burnett, Esq.
Smith Giacometti & Chikowski, LLC
100 S. Broad Street, Suite 1200
Philadelphia, PA 19110

Derek E. Jokelson, Esq.
Neil E. Jokelson & Associates, P.C
230 South Broad Street, 18th Floor
Philadelphia, PA 19102

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Barbara Townsend